UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL JAY STEWART,  )  CASE NO. C09-1511-RSL
         Petitioner, )
         v. )  REPORT AND RECOMMENDATION
RON VAN BOENING, )
         Respondent. )

Petitioner Michael Jay Stewart proceeds *pro se* in this 28 U.S.C. § 2254 habeas action. In November 2007, a King County Superior Court jury found petitioner guilty of one count of residential burglary-domestic violence and one count of malicious mischief in the second degree-domestic violence. (Dkt. 11, Ex. 1.) Petitioner pled guilty to the gross misdemeanor crime of violation of an anti-harassment order. (*Id.*, Ex. 2.) The trial court sentenced petitioner to 72 months confinement for the residential burglary-domestic violence conviction and 29 months confinement for the malicious mischief-domestic violence conviction, to run concurrently, and to twelve months confinement for the misdemeanor conviction, to run consecutive to the felony sentences. (*Id.*, Exs. 1 & 2.)

Petitioner raises a single ground for relief, arguing insufficient evidence to support his conviction. (Dkt. 4 at 6.) Respondent filed an answer to the petition with relevant portions of the state court record. (Dkts. 9 & 11.) Respondent concedes that petitioner appeared to have exhausted his habeas claim, but maintains that the claim lacks merit.

The Court has considered the record relevant to the ground raised in the petition, including all hearing transcripts. For the reasons discussed herein, it is recommended that petitioner's habeas petition be denied without an evidentiary hearing and this action dismissed.

I

The Washington Court of Appeals described petitioner's case as follows:

> Kristina Dawson and Michael Stewart had been dating for a few years when Dawson finally ended the relationship and obtained an antiharassment order prohibiting Stewart from coming within 500 feet of Dawson's residence. Before they broke up, Stewart had been to Dawson's apartment several times.
>
> A few months after the breakup, at around midnight, Theodore Carman and Jennifer Holt awoke to the sounds of loud banging outside their apartment. Looking out the peephole, Carman saw a man walk into Dawson's apartment. He and Holt then heard loud banging from inside the apartment, and Carman saw a white male emerge, empty handed, and walk towards the parking lot. From the window, Holt saw a while male walking quickly or running toward an older, white four door sedan. Holt briefly saw the man's face when he got in the vehicle. The car then quickly drove away, heading east into the apartment complex. Holt called 911.
>
> At about the same time, apartment security officer Benjamin Tost saw an older, white four door sedan speeding toward him from the direction of Dawson's building. After the car nearly collided with his security vehicle, Tost followed it through the parking lot.
>
> The car pulled into a parking space in front of the R building. Tost asked the driver and sole occupant of the car for identification. The man produced a driver's license, which identified him as Michael Stewart. Stewart told him he was going to unit R4. [R4 belonged to a friend of Dawson's, and Stewart had been there before.] When Stewart realized Tost was not a police

officer, he fled on foot, leaving his identification with Tost. Tost called 911. At trial, Tost identified Stewart as the person he encountered.

When the police arrived, they saw that Dawson's apartment door had been forced in and heavily damaged. The police also found several items overturned and knocked to the ground. When Dawson returned to her apartment, she confirmed that nothing had been stolen.

The following day, a police officer showed Holt and Carman a photomontage, which included Stewart in position number five. Holt picked the person in position four, James Holtz. Holtz happened to be a long time acquaintance of Dawson's, but she had not seen him in 12 years and he did not know where she lived. Holt was 80 to 90 percent certain that Holtz was the person she had seen the night of the incident and visiting Dawson in the past. Carman thought the man he saw could have been either one of the men pictured in positions four or five. At trial, neither Carman nor Holt identified Stewart, whose appearance had changed since the incident.

Assistant apartment manage Sheryl Werth surveyed the damage to Dawson's door and provided a repair estimate to police. Werth testified it cost $500 to $650 to replace the door.

The State charged Stewart with residential burglary, malicious mischief in the second degree, and violation of an antiharassment order.

(Dkt. 11, Ex. 7 at 1-3.)

Petitioner filed a direct appeal in the Washington Court of Appeals. (*Id.*, Exs. 3 & 4.) A brief from his appellate counsel raised an ineffective assistance of counsel claim, while a "statement of additional grounds" filed *pro se* by petitioner alleged insufficient evidence to support his convictions. (*Id.*, Exs. 5 & 6.) On March 16, 2009, the Court of Appeals issued an order affirming petitioner's judgment and sentence. (*Id.*, Ex. 7.)

Petitioner sought review in the Washington Supreme Court, again arguing insufficient evidence to support his conviction. (Id., Ex. 8 at 2.) In an order dated September 8, 2009, the Chief Justice of the Supreme court denied the petition for review. (Id., Ex. 9.) The Court of

Appeals issued its mandate in petitioner's case on October 7, 2009.  (Id., Ex. 10.)

## II

Petitioner here raises a single ground for relief:

> Insufficient evidence[:]   In this Case an apartment door was somehow opened and items tossed around the room.   Two eyewitnesses called the police, and positively identified a man by the name of Mr. Holtz.   At trial the two eyewitnesses gave in court testimony that Mr. Holtz was the man accused of the crimes yet Mr. Stewart sits in prison without any evidence that he was the man who committed these crimes.

(Dkt. 4 at 5.)  As noted by respondents, petitioner appears to have properly exhausted this ground for relief by raising it before both the Washington Court of Appeals and the Washington Supreme Court as a federal constitutional violation.   *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994); and *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).    The Court, therefore, addresses the merits of petitioner's claim.

## III

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.   28 U.S.C. § 2254(d).   In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.   *Id.*

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). In addition, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner raises an insufficiency of the evidence claim. In reviewing such a claim, the Court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). The question is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Court affords significant deference to the trier of fact. *Wright v. West*, 505 U.S. 277, 296 (1992).

A jury found petitioner guilty of residential burglary-domestic violence and malicious mischief-domestic violence. *See* RCW 9A.52.025(1) ("A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."); and RCW 9A.48.080(1)(A) ("A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously: . . . Causes physical damage to the property of another in an amount exceeding

seven hundred fifty dollars[.]")   Petitioner does not discuss the essential elements of his crimes of conviction.   Instead, he maintains the absence of any evidence to support his conviction.  (*See* Dkts. 4 & 13.)

In considering this claim, the Washington Court of Appeals held as follows:

> When reviewing a challenge to the sufficiency of the evidence, we must determine, considering the evidence in the light most favorable to the State, whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).   We draw all inferences from the evidence in the State's favor, and interpret the evidence most strongly against the defendant. *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).
>
> Stewart contends there was "zero evidence" to identify him as the person who broke into Dawson's apartment because Carman and Holt identified another man.   But neither was certain about their photomontage identifications, which were based on fleeting opportunities to view the intruder, and Carman said the man he saw could have been either Stewart or Holtz.   What Carman and Holt were both sure of is that the suspect was someone they had seen at Dawson's apartment in the past.   Holtz had never been there; Stewart had visited several times.   Additionally, Holt saw the intruder run to an older, white sedan and drive away from the building at virtually the same time that Tost saw the same type of car speeding toward him from the building.   Tost followed the car and interacted with its driver, whose driver's license identified him as Stewart.   Tost also identified Stewart in court.   This evidence was sufficient for a jury to find that Stewart was the person who broke into Dawson's apartment.

(Dkt. 11, Ex. 7 at 5-6.)

In raising his claim before this Court, petitioner focuses on the two eyewitnesses to the incident giving rise to his conviction, Jennifer Holt and Theodore Carman.   He asserts that both Holt and Carman positively identified James Holtz as the perpetrator, both in the photomontage and in court, and testified in court they were "100% positive" petitioner was not

01 the perpetrator.  (Dkt. 13 at 3.)  Petitioner also asserts the existence of "other potential

02 evidence," stating that police officers failed to take fingerprint or other evidence from the scene

03 of the crime.  (*Id.*)  He argues that the state court unreasonably applied Supreme Court law in

04 rejecting his claim.  However, as argued by respondent and as discussed below, petitioner fails

05 to establish a basis for habeas relief.

06       Petitioner misrepresents the testimony of Holt and Carman.  Holt did identify Holtz as

07 the perpetrator in the photomontage and testified she recalled being "80 to 90 percent sure[]"

08 she had identified the right person.    (Dkt. 11, Ex. 12, Verbatim Report of Proceedings, Nov. 5,

09 2007, at 80-81.)  However, Carman identified either Holtz or petitioner as the perpetrator in

10 the photomontage, noting their photographs "looked very similar."  (*Id.* at 116-17.)

11 Moreover, at most, Holt and Carman stated they were unable to identify petitioner in court as

12 either the white male they had previously seen visiting Kristina Dawson at her apartment or the

13 white male they saw on the night of the incident in question; neither attested to being positive

14 petitioner was not the perpetrator.  (*Id.* at 61-62, 81, 104, 120.)  Also, both Holt and Carman

15 testified as to their belief that the man they observed on the night of the incident was the same

16 man they had previously observed at Dawson's apartment (*id.* at 61-62, 67, 104, 110), while

17 Dawson testified she only became reacquainted with Holtz well after the night of the incident

18 and had not seen him for some twelve years prior to that time (*id.* at 184-85).

19       Further review of the testimony elicited at trial also belies petitioner's assertion of an

20 absence of any evidence to support his conviction.  Carman testified that, on the night of the

21 incident in question, he heard banging noises outside the apartment he shared with Holt and

22 saw, through the apartment door peephole, a white male emerge from and quickly leave

Dawson's apartment. (*Id.* at 108-11.) Holt testified she subsequently observed, through a window in the apartment, a man walk quickly to an older model, white sedan in the parking lot and drive away quickly. (*Id.* at 63-67, 73-76.) Security Officer Ben Tost testified that, right around the same time as Carmen's and Holt's observations, he saw an older, white, four-door car come "flying through" the apartment parking lot and almost collide with his car. (*Id.* at 139-41.) Tost testified that he followed the car, made contact with the driver after the car stopped, obtained the license of the driver, and positively identified the driver as the individual in the license before the driver ran away. (*Id.* at 141-45.) Tost further testified that the driver's license belonged to Michael Stewart and made an in-court identification of petitioner as the driver he encountered that night. (*Id.* at 144-46.) Additionally, as asserted by respondent, it should be noted that petitioner pled guilty to the crime of violation of an anti-harassment order, an order prohibiting him from being within 500 feet of Dawson's residence. (Dkt. 11, Exs. 2 & 11.)

Given the above, petitioner fails to establish that the state courts' decisions were contrary to, or an unreasonable application of, federal law. Viewing the evidence in the light most favorable to the prosecution, the Court stands assured that a rational trier of fact could have found sufficient evidence to support petitioner's conviction. Accordingly, petitioner's only ground for relief lacks merit and should be denied.

IV

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a

substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a COA with respect to his claim for relief.

V

For the reasons discussed above, the Court recommends that petitioner's habeas petition be DENIED and this case DISMISSED. An evidentiary hearing is not required as the record conclusively shows that petitioner is not entitled to relief. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.") A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of March, 2010.

Mary Alice Theiler
United States Magistrate Judge